sponse to this application within five days thereafter.

SUMMERS, J., dissents. The application does not comply with the rules of this Court. There is no claim of indigency or that counsel could not be retained to prepare a proper application. In my view this non-compliance is a dilatory tactic employed to further circumvent the authority of the trial court.

266 So.2d 216

**SOCIETY TO OPPOSE PORNOG-RAPHY, INC.**

v.

**Michael G. THEVIS and Robert Di Bernardo, et al.**

**No. 52618.**

Sept. 19, 1972.

SUMMERS, Justice (dissenting).

On November 5, 1971 the trial judge issued his injunction prohibiting and restraining defendants from showing or selling pornographic material at 941 Decatur Street. Defendant Michael G. Thevis by various corporate organizations has attempted to conceal the fact that he con-

tinues to operate the premises at 941 Decatur Street.

Plaintiff filed a rule for contempt against defendants on May 10, 1972 alleging a violation of the November 5, 1971 injunction. Thevis was served personally with a rule to show cause why he should not be held in contempt for violating the injunction.

In order to present evidence of the violation, plaintiff obtained a subpoena duces tecum for the production of two films entitled, "Turn Me On LSD" and "Law and Disorder". This subpoena was served on Wayne Shurgin who had the films in his possession at the time. Shurgin was ordered by the subpoena to appear in court on May 19, 1972 and produce the films. He failed to do so. At that time the trial judge issued an attachment for the person of Shurgin, returnable May 26, 1972.

Sometime during the week of May 19–26, 1972 Michael Silvers, the attorney for defendants, appeared in the Court's chambers and in his most unctuous and self-accusing manner, told the trial judge that he advised Shurgin not to obey the order of the Court, and not to appear on May 19, 1972, and not to produce the two films which he had in his possession, but, rather, to bring the films to his, Silvers', office. Silvers then assured the trial judge that Shurgin was acting under his advice and that if anybody was responsible it was

he, Silvers, and that he would produce the films at any time the trial judge desired. He further explained to the judge that since the matter had been continued from May 19 by consent, that he did not realize he was doing anything wrong.

On the basis of the plea made by Silvers, the trial judge recalled the attachment for Shurgin. Relying upon Silvers' assurances that the films would be produced when requested, the judge permitted the films to remain in Silvers' possession. The matter was continued until June 16, 1972, and Silvers was ordered to produce the films in court on that day.

A few days prior to June 16 Silvers advised the judge in chambers that he discovered the films in his possession were not those called for in the subpoena, the subpoenaed films having been shipped off in the usual course of business. He further stated that he did not know where the films were and he could not produce them on June 16 as ordered.

On June 16 Silvers appeared in court and again advised the judge that he could not produce the films. Whereupon he was ordered to produce the films on the following Friday, June 23. When he appeared in Court on June 23 and advised that he could not produce the films, after argument, he was sentenced to five days imprisonment for contempt. He was forthwith incarcerated.

Silvers then applied to this Court to stay the sentence, and, although the application did not comply with this court's rules, a stay was granted, and Silvers was released from custody pending action of this Court on the merits of his application. Additional time was allowed to file a proper application. See Society to Oppose Pornography v. Thevis et al., 262 La. 1076, 266 So.2d 215. This application is now before us.

In a well-prepared response to the application the trial judge stated that ". . . Michael Silvers, had deliberately prevented the Court from obtaining the evidence which might have convicted his clients of contempt of Court and that in order to accomplish his purpose he knowingly misrepresented, imposed upon and deceived the Court."

Today this Court affirms the trial court's finding that Michael Silvers was guilty of contempt. But by ex parte order, in chambers, reduced the sentence from five days to twenty-four hours. This action is sought to be supported on the ground that Silvers is an attorney at law. As such, it is decided that Section 4611(A) (1) of Title 13 of the Revised Statutes applies. That provision limits punishment for a direct contempt of court committed by an attorney at law, by a fine of not more than one hundred dollars, or by imprisonment for not more than twenty-four hours, or both, on a first offense.

In my view the trial judge was amply supported by law in imposing imprisonment for five days. The offense involved was a direct contempt in that it was a contumacious failure to comply with a subpoena which Silvers agreed to obey. La.Code Civ.Proc. art. 222. This agreement occurred when Silvers accepted custody of the films ordered to be produced in court and when he informed the trial judge that the films would be produced. By his words and actions Silvers led the Court to believe that he had custody of the films. By this representation he gained additional time to produce the films. However, when ordered to do so, he advised the court that the films were not in his possession and an extended period of time would be required to produce them. This fabrication the trial judge did not believe.

It is my opinion that when Silvers represented to the court that he had possession of the films and would produce them when ordered, he withdrew from his role as attorney in the matter. He then assumed the role of an ordinary witness in possession of an object sought by the court, vital to the outcome of the suit. In effect, he became the custodian of the films, entrusted as such by the court with the vital evidence at his own request. In this role Silvers could not claim the benefit of the limited punishment prescribed for attorneys.

Today's order deprives the trial court of authority clearly conferred by law. Moreover, the order reducing the punishment and permitting Silvers to play the role of custodian for the court, and attorney at the same time, denies the trial court authority to enforce its injunction issued on November 5, 1971. La.R.S. 13:4611. In the light of the trial judge's finding of "deliberate" obstruction of the Court's processes; and that Silvers "knowingly misrepresented, imposed upon and deceived the Court", today's ruling does no service to the orderly administration of justice.